UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELENA PUGH,

                Plaintiff,           Civil Action No. 16-12057
                                        Honorable Sean F. Cox
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 15]**

Plaintiff Helena Pugh ("Pugh") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

I.      **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Pugh is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Pugh's Motion for Summary Judgment [14] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.    REPORT

### A.    Procedural History

On April 2, 2013, Pugh filed an application for SSI, alleging disability as of that date. (Tr. 161-66).  This application was denied initially on September 3, 2013.  (Tr. 119-22).  Pugh filed a timely request for an administrative hearing, which was held on November 10, 2014, before ALJ Jerome Blum.  (Tr. 67-87).  Pugh, who was represented by attorney Samantha Ball, testified at the hearing, as did vocational expert Cheryl Mosley.  (*Id.*).  On December 23, 2014, the ALJ issued a written decision finding that Pugh is not disabled under the Act.  (Tr. 53-62). On May 4, 2016, the Appeals Council denied review.  (Tr. 1-6).  Pugh timely filed for judicial review of the final decision on June 7, 2016.  (Doc. #1).

### B.    Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

2

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.  Background

#### 1.  Pugh's Reports and Testimony

At the time of the administrative hearing, Pugh was 48 years old, and at 5'9" tall, weighed 210 pounds.  (Tr. 70, 232).  She reported living in a shelter.  (Tr. 254).  She had completed the eleventh grade, as well as job training in the culinary arts.  (Tr. 233).  Previously, she worked as a prep cook at a steak house in Indiana, but she quit that job in 2009 or 2010 to return to Michigan to care for her ailing mother and has not worked since.  (Tr. 70-71).

Pugh alleges disability as a result of bipolar disorder, chronic migraine headaches, asthma, and "back problems."  (Tr. 71).  She testified that she gets headaches every day, but "some days are worse than others";  on the worst days, she does not get out of bed, puts blankets over her blinds, and turns her phone off because she is sensitive to light and sound.  (Tr. 73).  She gets this type of headache approximately twice per month, and they last for three days at a time.  (*Id.*).  She uses three inhalers to control her asthma but still has difficulty walking more

than 15-20 minutes at a time.  (Tr. 74-75).  Pugh described a "shooting pain" in her lower back, which also makes "excessive walking" difficult.  (Tr. 75).  She testified that she can lift and carry 5-10 pounds and sit for 1 ½ to 2 hours at a time before her back starts hurting.  (Tr. 76).

Pugh testified that her bipolar disorder is the "major problem" that keeps her from working, saying that her symptoms include crying, breaking things, isolating herself, and having tantrums.  (Tr. 76).  Pugh further testified that her bipolar disorder makes it difficult for her to concentrate, and she does not enjoy socializing with others.  (Tr. 80-81).  At the time of the hearing, she was taking trazodone and Latuda for this condition, as well as Norco for her headaches, and she testified that the medications cause drowsiness (requiring her to take naps during the day).  (Tr. 77-78, 81).

In terms of daily activities, Pugh is able to wash dishes, straighten up her house, attend to her own personal care, go to the grocery store, and prepare simple meals.  (Tr. 82, 255-57).  She does not drive because it makes her "uneasy" but is able to use public transportation.  (Tr. 257).  She needs reminders to take her medication but is able to pay bills and handle a checking and savings account.  (Tr. 256-57).  She goes to church weekly but otherwise prefers not to attend social activities.  (Tr. 257-58).[1]

### 2. *Medical Evidence*

The Court has thoroughly reviewed Pugh's medical record.  In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Cheryl Mosley testified as an independent vocational expert ("VE") at the administrative

---

[1] Pugh's friend, Virginia Ward, completed a third party function report in April 2013, in which she generally corroborated Pugh's assertions regarding her limitations.  (Tr. 246-53).

4

hearing.  (Tr. 83-86).  The ALJ asked the VE to imagine a claimant of Pugh's age, education, and work experience who can perform sedentary, unskilled work, requiring lifting no more than ten pounds.  (Tr. 83-84).  The VE testified that the hypothetical individual would be capable of working in the job of bench hand (390,000 jobs in the state of Michigan).  (*Id.*).

### D.    The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Pugh has not engaged in substantial gainful activity since April 2, 2013 (the application date).  (Tr. 55).  At Step Two, the ALJ found that Pugh has the severe impairments of chronic migraine headaches status post craniotomy with resection of benign colloid cyst (3rd ventricle), asthma, hypertension, obesity, bilateral plantar fasciitis, bipolar I disorder, and polysubstance abuse (including marijuana and crack cocaine).  (*Id.*).  At Step Three, he found that Pugh's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then found that Pugh retains the residual functional capacity ("RFC") to perform sedentary work, except she is limited to unskilled jobs "offering a simple routine lifting ten pounds or less performing simple repetitive tasks."  (Tr. 57).

At Step Four, the ALJ determined that Pugh is unable to perform any of her past relevant work.  (Tr. 61).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Pugh is capable of performing a significant number of jobs that exist in the national economy.  (*Id.*).  As a result, the ALJ found that Pugh is not disabled under the Act.  (Tr. 62).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

6

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In her motion, Pugh argues that the ALJ erred in:   (1) evaluating the opinion of her treating physician, Dr. Makki; (2) assessing her RFC; and (3) evaluating her credibility.   Each of these arguments is addressed below.

*1.     Substantial Evidence Supports the ALJ's Evaluation of*
*The Opinion of Pugh's Treating Psychiatrist, Dr. Makki*

Pugh first argues that the ALJ failed to properly weigh the medical opinion evidence from Hyder Makki, D.O., her treating psychiatrist, and to give good reasons for discounting Dr. Makki's opinion.  (Doc. #14 at 19-24).

On January 30, 2014, Dr. Makki, a psychiatrist at Detroit Central City Community Mental Health ("Central City") completed a Mental RFC Questionnaire.  (Tr. 685-88).  On that form, Dr. Makki indicated that Pugh had been treating at Central City since March 21, 2013; her diagnosis was bipolar I disorder; and she had a Global Assessment of Functioning[2] ("GAF") score of 40.  (Tr. 685).  When asked to describe the "clinical findings" demonstrating the

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

severity of Pugh's mental impairments and symptoms, Dr. Makki wrote "restless, guilty, angry, crying spells, sad, tearful, agitated, auditory hallucinations, suicidal thoughts, history of suicide attempt, [and] psychotic." (*Id.*). Dr. Makki then checked boxes indicating that Pugh's symptoms include anhedonia or pervasive loss of interest in almost all activities, thoughts of suicide, feelings of guilt or worthlessness, persistent disturbances of mood or affect, emotional withdrawal or isolation, hallucinations or delusions, emotional lability, manic syndrome, and sleep disturbance. (Tr. 686). Dr. Makki also checked boxes indicating that Pugh is unable to meet competitive standards in all of the functional areas he was asked to evaluate regarding the mental abilities and aptitudes necessary for unskilled, semi-skilled, and skilled work. (Tr. 687). He justified this portion of his opinion by writing "emotional liable [sic], auditory hallucinations, suicide thoughts, crying spells, [and] psychotic." (*Id.*).

Dr. Makki also checked boxes indicating that Pugh is "seriously limited, but not precluded" in the abilities to interact appropriately with the general public and to maintain socially appropriate behavior. (Tr. 688). Dr. Makki further opined that Pugh is unable to meet competitive standards in her abilities to adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, and use public transportation. (*Id.*). Lastly, Dr. Makki indicated that Pugh is likely to miss more than four days of work per month and noted that she "socially isolates" and is "unable to concentrate." (*Id.*).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give

an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

In this case, the ALJ specifically considered Dr. Makki's opinion but declined to afford it controlling weight because it was inconsistent with other evidence in the record, including Pugh's mental health treatment notes and reported activities of daily living. (Tr. 60). These were valid reasons to discount Dr. Makki's opinion, and the ALJ's findings in these respects are supported by substantial evidence, as discussed in greater detail below. *See* 20 C.F.R. §416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

First, the ALJ discounted Dr. Makki's January 30, 2014 opinion because it was inconsistent with other mental health treatment notes in the record. (Tr. 60). Specifically, the ALJ pointed out that, on September 10, 2013, Dr. Makki noted that Pugh denied any auditory or visual hallucinations. (Tr. 60, 784). Moreover, as the ALJ noted, Pugh presented at that session fully alert and oriented, she was fairly dressed and groomed, and her speech was clear, logical,

and goal-directed.  (*Id.*).  Likewise, Pugh denied suicidal or homicidal thoughts, as well as the use of illicit substances.[3]  (Tr. 784).  And, follow-up treatment notes referenced by the ALJ also reflect that Pugh regularly presented to appointments alert and oriented, often denied auditory and visual hallucinations, and routinely was able to meet her basic needs of daily living without assistance.  (Tr. 60, 662, 733, 759, 767, 784).  Moreover, Pugh saw Dr. Makki on January 29, 2014 – the day before he completed the Mental RFC Questionnaire – at which time she reported auditory hallucinations but otherwise was alert and fully oriented; fairly dressed and groomed; had clear, logical, and directed speech; showed no loose associations; denied suicidal or homicidal thoughts; and did not complain of any side effects from her medications.[4]  (Tr. 759).

        Pugh argues that the ALJ "single[d] out" the September 10, 2013 treatment note in which she denied auditory and visual hallucinations, asserting that "the majority of the mental health treatment records from [Central City] are indicative of the limitations assessed by Dr. Makki." (Doc. #14 at 22).  This argument misses the mark.  As set forth above, there are numerous treatment notes from Central City (discussed above) that are at odds with Dr. Makki's opinion. Moreover, it is not enough for Pugh to point to evidence that supports the limitations imposed by Dr. Makki; rather, so long as the ALJ's conclusions are supported by substantial evidence, the Court must affirm the Commissioner's decision, even if there is substantial evidence supporting the opposite conclusion as well.  *See, e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th

---

[3] This is true despite the fact that subsequent treatment notes indicate that Pugh continued to use marijuana daily at least until November 24, 2013, and was in a drug abuse rehabilitation program as of August 26, 2014.  (Tr. 60, 734, 739).

[4] Even though the ALJ did not discuss each treatment note that conflicts with Dr. Makki's opinion, he was not obligated to do so.  *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (ALJ "is not required to analyze the relevance of each piece of evidence individually").  Instead, the ALJ wrote that he considered the "entire record," and his discussion of the Central City treatment notes that conflict with Dr. Makki's opinion cites Exhibit B16F, which includes the treatment notes described above.  (Tr. 60).

Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."); *Gower v. Comm'r of Soc. Sec.*, 2015 WL 163830, at *7 (E.D. Mich. Jan. 13, 2015) ("[S]o long as the ALJ's conclusion is supported by substantial evidence, a court must defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.") (internal citations omitted). Here, the ALJ's decision to discount Dr. Makki's opinion as inconsistent with significant portions of the Central City treatment notes is supported by substantial evidence and, therefore, should be affirmed.

Additionally, in discounting the opinion of Dr. Makki, the ALJ noted that function reports in the record conflicted with this opinion. (Tr. 60). Specifically, the ALJ discussed the third party function report completed by Pugh's friend, Virginia Ward, who indicated that Pugh has no trouble taking care of her personal needs, can prepare simple meals and perform some indoor household chores (such as washing dishes), can use public transportation, occasionally shops for groceries, attends church, and handles her finances. (Tr. 60, 247-50). The ALJ also cited to Pugh's own function report, in which she confirmed that she has no problem caring for her personal needs, prepares simple meals, does light household chores, uses public transportation, goes out alone, shops, manages her finances, and regularly attends church services. (Tr. 60, 255-58). Importantly, both Pugh and Ms. Ward indicated that Pugh has no personal care limitations and can use public transportation (Tr. 247, 249, 255, 257); her admitted ability to perform these activities conflicts with Dr. Makki's opinion that she is unable to meet competitive standards with respect to neatness and cleanliness, traveling in unfamiliar places, and using public transportation (Tr. 688). Thus, these function reports also provide substantial

11

evidence supporting the ALJ's decision to discount Dr. Makki's opinion as inconsistent with other evidence in the record.[5]  *See, e.g., Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-09 (6th Cir. 2012) (ALJ properly discounted treating physician opinion where it conflicted with plaintiff's own testimony and reports regarding her activities and ability to function socially).

Finally, it bears mentioning that the ALJ discussed the opinion of the consultative examiner, Nick Boneff, Ph.D., which conflicted with Dr. Makki's opinion in several respects. (Tr. 59 (citing Tr. 611-15)).  For example, Dr. Boneff opined that despite problems with concentration, Pugh displayed moderate strengths in the capacity for abstract thinking, as well as in immediate memory and the ability to pay attention.  (Tr. 614).  Dr. Boneff further opined that Pugh has "sufficient cognitive strengths to be able to engage successfully in work type activities of a relatively simple nature, and should be able to remember and execute a three or four-step repetitive procedure with only a slight to moderate degree of independent judgment or decision making required."  (*Id.*).  The fact that Dr. Boneff's opinion conflicts with Dr. Makki's provides yet another reason for the ALJ to discount Dr. Makki's opinion.[6]  *See Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This Court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another where, as here, the ALJ's decision

_____

[5] Pugh accuses the ALJ of "cherry pick[ing] the function report" and ignoring any explanations provided as to *how* she performs these activities (i.e., that she "hardly" completes household chores, "rarely" goes outside, and shops only once a month).  (Doc. #14 at 21-22 (citing Tr. 248-49)).  But, the ALJ did not point to these reports as evidence that Pugh is not disabled; rather, he highlighted the fact that Pugh's own statements, as well as those of a friend who sees her almost every day, conflict with Dr. Makki's opinion that Pugh cannot, for example, adhere to basic standards of cleanliness, travel in unfamiliar places, or use public transportation.  (Tr. 56, 60).

[6] Although the ALJ did not specifically point to Dr. Boneff's opinion as one of his "good reasons" for discounting Dr. Makki's opinion, he is not required to do so.  *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).  Where, as here, the ALJ discussed the opinion of a doctor reaching a different conclusion than the treating physician, the Court may consider whether such discussion "implicitly provides sufficient reasons for the rejection of the [treating physician's] opinion …."  *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005).

is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").  For all of these reasons, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Makki's opinion.

> 2.  *Substantial Evidence Supports the ALJ's RFC Assessment*

The ALJ determined that Pugh has the RFC to perform sedentary work, except she is limited to unskilled jobs "offering a simple routine lifting ten pounds or less performing simple repetitive tasks."  (Tr. 57).  Pugh now argues that this assessment "falls short of including the entirety of [her] documented limitations."  (Doc. #14 at 24).  The Court disagrees.

The ALJ considered the objective medical evidence when formulating Pugh's RFC assessment.  (Tr. 57-59).  For example, the ALJ noted that Pugh experienced migraine headaches, for which she sought both emergent and ongoing treatment.  (Tr. 57-58, 363, 373, 375, 384, 397, 403).  The ALJ further noted that Pugh presented to the emergency room on February 14, 2013, with complaints of a headache and left arm pain.  (Tr. 58, 363).  She was diagnosed with deep vein thrombosis in her left leg and a third ventricle cyst causing obstructive hydrocephalus.  (Tr. 363-66).  On February 27, 2013, she underwent surgery to drain the cyst.  (Tr. 330).  There were no complications, and at a postoperative visit, Pugh was released to return to work with restrictions (no repetitive squatting, bending, or lifting, and no lifting in excess of fifteen pounds) on March 10, 2013.  (Tr. 346).

On March 13, 2013, Pugh saw Sofia Syed, D.O., reporting that she had recently stopped using crack cocaine and marijuana and was in a substance abuse program.  (Tr. 349).  On examination, Dr. Syed found no evidence of any neurovascular or neurological deficits, and noted that Pugh was alert and oriented and presented with normal posture and gait.  (Tr. 350).  The ALJ further noted that, on April 2, 2013, Pugh continued to complain of intractable headaches with occasional dizziness.  (Tr. 58, 422).  On May 24, 2013, Pugh underwent a

13

craniotomy and resection of a benign colloid cyst. (Tr. 589). As the ALJ noted, there were no reported surgical or postoperative complications, and there is no indication that the cyst has recurred. (Tr. 58).

On July 22, 2013, Pugh had a post-operative follow-up visit to the Neurology Clinic. (Tr. 605-07). She continued to complain of headaches and reported that "the character and frequency of her headaches have not changed" since her May 2013 surgery. (Tr. 605). The doctor found no evidence of any neurological or neurovascular deficit and noted that Pugh was alert and oriented, with good attention and concentration, and intact memory. (Tr. 606-07). She was assessed with chronic migraine headaches and started on topiramate. (Tr. 607).

In addition to the objective medical evidence, the ALJ discussed the medical opinion evidence. (Tr. 59-60). Specifically, the ALJ noted that Dr. Boneff opined that Pugh can perform simple, repetitive tasks requiring no more than a slight to moderate degree of independent judgment. (Tr. 59, 614). He also discussed Dr. Makki's opinion that Pugh cannot meet competitive standards in many areas associated with unskilled work, reasonably discounting that opinion for the reasons discussed above.[7] (Tr. 59-60, 688).

In the face of all of this evidence considered by the ALJ, Pugh merely vaguely asserts that the ALJ erred in failing to "account for the additional non-exertional limitations caused by her bipolar disorder and migraine headaches." (Doc. #14 at 26). Pugh does not, however, specify any additional limitations that the ALJ should have included in the RFC assessment. *See Turvey v. Comm'r of Soc. Sec.*, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) (rejecting the plaintiff's challenge to the RFC assessment where he did not "specify any additional work-

---

[7] The ALJ also made a credibility determination regarding Pugh's allegations of disabling pain and symptoms. (Tr. 61). For reasons discussed in Section II.F.3, *infra*, the ALJ supportably determined that Pugh's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 61).

related functional limitations the ALJ should have, but did not, include in the RFC assessment resulting from his pain or mental impairments").  Instead, Pugh merely recites several of her impairments and symptoms, including bipolar disorder (characterized by excessive pacing, irritability, outbursts, and racing thoughts), auditory hallucinations, crying spells, and memory problems.  (Doc. #14 at 25-26).  But, Pugh ignores the fact that these impairments and symptoms – even if fully credible (which the ALJ supportably found they were not) – are not the same as *functional limitations* resulting from those impairments or symptoms.  *See* 20 C.F.R. §416.929(b) ("The finding that your impairment(s) could reasonably be expected to produce your pain or other symptoms does not involve a determination as to the … functionally limiting effects of your symptoms.").  Thus, Pugh's attempt to attack the ALJ's RFC assessment by simply reciting her diagnoses and symptoms falls short, and the Court finds that the RFC assessment is supported by substantial evidence.[8]

### 3.   Substantial Evidence Supports the ALJ's Credibility Determination

Pugh's final argument is that the ALJ erroneously discounted her credibility "based on a boilerplate determination that was result-oriented."  (Doc. #14 at 27).  Similarly, Pugh asserts that the ALJ's credibility determination is not supported by substantial evidence because it was "made without an actual discussion of why [her] testimony was discounted …."  (*Id.* at 28).  These arguments lack merit.

---

[8] In her reply brief, Pugh asserts that the RFC assessment "does not take into consideration multiple limitations supported by the record, such as, getting along with co-workers/supervisors, making simple work-related decisions; and dealing with normal work stress."  (Doc. #16 at 5).  Pugh does not, however, provide any citation to the record in support of this assertion.  *See, e.g., Mosed v. Comm'r of Soc. Sec.*, 2016 WL 1084679, at *3 (E.D. Mich. Mar. 21, 2016) ("The Court reiterates that it is not its role to comb through the record for evidence to support Plaintiff's argument.").  Moreover, to the extent Pugh is relying on Dr. Makki's opinion as to these limitations, the ALJ reasonably discounted that opinion for the reasons discussed in Section II.F.1, *supra.*

The Sixth Circuit has held that determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"   *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).   Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."   *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.   *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).   Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible.   *Soc. Sec. Rul. 96-7*, 1996 WL 374186, *1 (July 2, 1996); *see also* 20 C.F.R. §416.929(a).

First, Pugh's argument that the ALJ's decision lacks "an actual discussion of why [her] testimony was discounted …." ignores that the ALJ explicitly stated that he found Pugh's allegations not entirely credible "for the reasons explained in this decision."  (Tr. 61).  While it may have been preferable for the ALJ to have explicitly referenced particular factual inconsistencies in the portion of his decision containing his ultimate credibility finding, that is not required as long as his reasoning is apparent to the reader.   *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion[.]").  Here, reading the ALJ's decision as a

16

whole, several valid reasons are apparent as to why he discounted Pugh's credibility.  First, as set forth above, *supra* at 8-15, the ALJ considered the objective medical evidence and found that it did not fully support Pugh's allegations of disabling symptoms.  This was an appropriate consideration.  *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *6.  In addition, the ALJ considered Pugh's activities of daily living, finding that she is able to prepare simple meals, care for her own personal needs, use public transportation, shop, manage her finances, attend church services, and perform light household chores.  (Tr. 56, 248-50, 256-58).  The ALJ correctly concluded that Pugh's abilities in these respects are inconsistent with her allegations of disability and, thus, a reason to discount the credibility of those allegations.  (Tr. 56, 59).  *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *3.  Next, the ALJ considered that when Pugh took her prescribed medications, her symptoms abated and she reported improvement.  (Tr. 57, 354, 616).  *See* 20 C.F.R. §416.929(c)(3)(iv) (permitting consideration of the effectiveness of medication).  And, the ALJ pointed out that Pugh's own reports of her limitations were not always consistent: for example, Pugh alleged that she generally avoids social contact, but also admitted to using public transportation, shopping, and attending church services, all of which require some degree of social interaction.  (Tr. 56, 257-59, 612).  This too was a valid consideration.  *See Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

In summary, while the ALJ's credibility analysis is not contained in the portion of his decision in which he announced his ultimate credibility finding, his reasoning is adequately spelled out throughout the decision such that it is apparent to the reader.  Moreover, the ALJ's reasoning is supported by substantial evidence, and Pugh has not shown a "compelling reason" to disturb the ALJ's credibility determination.  *Smith*, 307 F.3d at 379.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Pugh's Motion for Summary Judgment [14] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: March 27, 2017            s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                             United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
